IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DEBORAH O'DELL,                    )
                                   )
            Plaintiff,             )
                                   )  CIVIL ACTION
v.                                 )
                                   )  No. 08-4128-JAR-GBC
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
            Defendant.             )
_____)

**REPORT AND RECOMMENDATION**

Plaintiff seeks review of a decision of the Commissioner of Social Security (Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act). Finding error in the ALJ's application of the legal standard at step four of the sequential evaluation process, the court recommends the decision be REVERSED and judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g), REMANDING the case for further proceedings.

**I.  Background**

Plaintiff applied for DIB and SSI on June 3, 2004. (R. 21, 115-17, 270-73). Her applications were denied initially and upon

reconsideration, and plaintiff timely sought a hearing before an administrative law judge (ALJ). (R. 21, 52, 53, 60, 262, 268). ALJ Michael R. Dayton held a hearing on March 13, 2007 at which plaintiff appeared and was represented by a non-attorney representative. (R. 21, 32-51, 80). Plaintiff testified at the hearing and a vocational expert (hereinafter VE), Danny R. Zumalt, appeared but did not testify. Id.

After the hearing, the ALJ procured examinations and medical source statements regarding plaintiff from a psychologist and a physician, made an assessment of plaintiff's RFC, and secured answers to interrogatories from the VE regarding plaintiff's past relevant work, plaintiff's ability to do her past relevant work, and plaintiff's ability to do other jobs in the economy. (R. 223-28, 483-503). The ALJ provided copies of the new evidence to plaintiff's representative, and sought input from plaintiff. (R. 210-11, 229-30). With regard to the new medical evidence, plaintiff declined a supplemental hearing, stated that she was taking the new evidence to her treating doctors, and stated that she would forward copies of their responses to the ALJ. (R. 207, 212-13). The court is unable to locate any response from plaintiff's doctor's regarding the new evidence, or any response from plaintiff regarding the VE testimony.

Thereafter, the ALJ issued a decision finding plaintiff is able to perform her past relevant work as a kitchen helper or as

-2-

a sewing machine operator and is, therefore, not disabled within the meaning of the Act or the regulations. (R. 21-31). Consequently, he denied plaintiff's applications. (R. 31).

Plaintiff disagreed with the decision, submitted additional evidence, and sought Appeals Council review of the decision. (R. 14-16, 505-07, 508-85). The Appeals Council made the additional evidence a part of the record and considered it, but denied plaintiff's request for review. (R. 7-11). Therefore, the ALJ decision is the Commissioner's final decision. Id.; Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review.

## II. Legal Standard

The court's review is guided by the Act. 42 U.S.C. §§ 405(g), 1383(c)(3). Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion. Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir.

1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner uses a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (2007); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has severe impairments, and whether the severity of her impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Id. at 750-51. If plaintiff's impairments do not meet or equal the severity of a listing, the Commissioner assesses claimant's RFC. 20 C.F.R. §§ 404.1520, 416.920. This assessment is used at both step four and step five of the sequential evaluation process. Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform her past relevant work, and whether she is able to perform other work in the economy. Williams, 844 F.2d at 751. In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work. Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ applied the incorrect legal standard in evaluating the medical opinions and in evaluating the

credibility of plaintiff's allegations of symptoms resulting from her impairments, erred in assessing plaintiff's RFC, and failed to apply the correct legal standard in finding that plaintiff has the capacity to perform her past relevant work at step four of the sequential evaluation process.  The Commissioner argues that the ALJ properly evaluated the medical opinions and the credibility of plaintiff's allegation, and the RFC assessment based upon those evaluations is also proper.  He argues that the ALJ properly considered and determined plaintiff is able to perform her past relevant work.  Finding error requiring remand in the ALJ's step four evaluation, the court begins with consideration of that issue and only briefly addresses the ALJ's evaluation of the medical opinions.  Plaintiff may make her remaining arguments before the Commissioner after remand.

**III. Step Four Evaluation**

At step four of the sequential evaluation process, the ALJ determined that plaintiff is able to perform her past relevant work as a kitchen helper or as a sewing machine operator because that work does not require "performance of work-related activities precluded by the claimant's residual functional capacity."  (R. 30).  The ALJ's step four analysis consisted of three sentences which the court quotes in their entirety:

> In response to interrogatories, vocational expert, Dan Zumalt, M.S., Q.R.P., noted that the claimant had prior work as a companion, kitchen helper and sewing machine operator (Exhibit 20E).  The vocational expert further

> noted that based on the residual functional capacity, the claimant could perform prior work as a kitchen helper and sewing machine operator but did not include work as a companion.
>
> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.

(R. 30).

As plaintiff's brief suggests, the Tenth Circuit has recognized that a proper step four analysis consists of three sequential phases in which the ALJ must make specific on-the-record findings. (Pl. Br. 32-34)(citing Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003); Winfrey v. Chater, 92 F.3d 1017, 1023-25 (10th Cir. 1996); and Henrie v. Dep't of Health and Human Servs., 13 F.3d 359, 361 (10th Cir. 1993)). The required analysis is based upon the three-phase procedure presented in Social Security Ruling (SSR) 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings, 809, 812 (1983). Winfrey, 92 F.3d at 1023-25; Henrie, 13 F.3d at 361. In phase one, "the ALJ should first assess the nature and extent of [the claimant's] physical limitations." Winfrey, 92 F.3d at 1023. In phase two, the ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant work." Id., 92 F.3d at 1024. Finally, in phase three, the ALJ must determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase

one." Id., 92 F.3d at 1023. These findings are to be made on the record by the ALJ. Id. 92 F.3d at 1025; see also, SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings, at 813 ("decision must contain . . . specific findings of fact" regarding each of the three phases).

The Tenth Circuit explained that an ALJ may not delegate the step-four analysis to the VE. Id., 92 F.3d at 1025-26. He may, however, properly rely on information supplied by the VE in making his findings at phase two regarding the demands of plaintiff's past relevant work, and at phase three regarding whether plaintiff could meet those demands, and he may accept the VE's opinions. Doyal, 331 F.3d at 761. The critical distinction is whether the ALJ merely relied upon the VE testimony in making the required findings or whether the ALJ delegated the phase two and phase three findings to the VE. Id. 331 F.3d at 761. Where the ALJ made the phase two and phase three findings and quoted the VE testimony approvingly in support of those findings, he has properly relied upon the VE testimony. Id. On the other hand where the ALJ has personally made only phase one findings regarding plaintiff's "limitations, and the remainder of the step four assessment takes place in the VE's head, [the court is] left with nothing to review." Winfrey, 92 F.3d at 1025.

The court finds the facts here more analogous to Winfrey than to Doyal, finds that the ALJ did not make the required

findings in phase two and phase three, and finds that remand is necessary for the Commissioner to make the required on-the-record findings. Here, the ALJ made an RFC assessment (R. 25), and thereby fulfilled the phase one requirement to assess and make an on-the-record finding regarding plaintiff's limitations. However, there is no mention of, and certainly no finding regarding, the mental and physical demands of any of plaintiff's past relevant work as is required in phase two. The ALJ merely made the conclusory finding that plaintiff's past relevant work as a kitchen helper or a sewing machine operator do not require work-related activities precluded by plaintiff's RFC. (R. 30).

The phase three analysis has the same deficiencies. The ALJ noted that the VE opined plaintiff could perform past relevant work as a kitchen helper or as a sewing machine operator. Id. The ALJ stated that he compared plaintiff's RFC with the physical and mental demands of plaintiff's work as a kitchen helper or a sewing machine operator, and the ALJ made a conclusory finding that plaintiff could perform those jobs both as actually performed and as generally performed. Id. The decision reveals that the entire phase two and phase three analysis took place in the VE's head, and the ALJ merely accepted the analysis of the VE without making any analysis himself. That does not comport with the requirements of Winfrey and Doyal, or of SSR 82-62.

The Commissioner argues that the ALJ properly found plaintiff can perform her past relevant work. (Comm'r Br. 17-18). He argues that plaintiff described her past work in her application materials and the ALJ properly relied upon plaintiff's description and the opinion of the VE. Relying upon the case of <u>Dover v. Apfel</u>, No. 99-5035, 2000 WL 135170 (10th Cir. Feb. 7, 2000), the Commissioner argues that even though the ALJ's analysis is brief, the ALJ obtained adequate factual information regarding past relevant work, and adequately considered the three phases of the analysis. <u>Id.</u>

The court does not agree. The <u>Dover</u> court specifically noted the ALJ had questioned Dover and the VE about the demands of Dover's past work and obtained adequate factual information to determine the mental and physical demands of Dover's past work. <u>Dover</u>, 2000 WL 135170 at *3. Here, as discussed above the VE made the step four analysis in his head and the ALJ merely accepted the VE's analysis. The VE's findings regarding past work stated only the exertional requirements and the skill level of the work. (R. 224). There is no further mention regarding the specific mental or physical demands of that work. The ALJ's interrogatories stated his findings regarding plaintiff's RFC, and asked the VE if plaintiff could do past relevant work based upon the RFC given. <u>Id.</u> Without elaboration, the VE responded "Yes," plaintiff could perform past work as a kitchen helper, or

as a sewing machine operator.  Id.  Although the ALJ questioned plaintiff regarding past relevant work, there were no questions regarding the mental or physical demands of plaintiff's past work as a kitchen helper or as a sewing machine operator.  (R. 39-40). The record contains "Work History Reports" completed by plaintiff (R. 138-45, 165-72), but the decision contains no mention or discussion regarding those reports.  Different than the ALJ in Dover, the ALJ here did not question plaintiff or the VE about the demands of Dover's past work and did not obtain adequate factual information to determine the mental and physical demands of Dover's past work.  The decision gives no indication that the ALJ gave any personal consideration to the mental or physical demands of plaintiff's past relevant work and whether plaintiff's abilities would permit her to meet those demands.  He abdicated his responsibility in that regard to the VE, and accepted the VE's conclusion without making specific findings on the record. Remand is necessary for the Commissioner to ensure that the requirements of SSR 82-62, Winfrey, and Doyal are met.

The court is aware that plaintiff points to no specific mental or physical demand of her past work of which she is incapable, and that remand in such a case is in tension with plaintiff's burden of proof at step four of the sequential evaluation process.  See, (Comm'r Br. 18)(plaintiff does not identify any requirement that was not considered or of which she

is incapable); Henrie, 13 F.3d at 361(burden is plaintiff's, but ALJ has duty as stated in SSR 82-62). However, the Commissioner promulgated SSR 82-62 for application at step four even though the burden of proof is on plaintiff. Social Security Rulings are binding and must be applied by an ALJ. Sullivan v. Zebley, 493 U.S. 521, 530 n.9 (1990); Hayden v. Barnhart, 374 F.3d 986, 992 n.9 (10th Cir. 2004); Neilson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993); Kilpatrick v. Astrue, 559 F. Supp. 2d 1177, 1181 (D. Kan. 2008); 20 C.F.R. § 402.35(b)(1). SSR 82-62 does not limit the requirement for specific findings only to cases where plaintiff has identified specific requirements of past work of which she believes she is incapable. Therefore, the requirement for on-the-record findings regarding the three phases of step four must be applied regardless of plaintiff's failure to identify specific requirements of which she is incapable.

Finally, the court notes that where an ALJ errs at step four but makes a proper alternative finding at step five that a significant number of jobs which plaintiff can perform are available in the economy, any step four error is harmless, and the decision will be affirmed. Murrell v. Shalala, 43 F.3d 1388, 1389-90 (10th Cir. 1994). Here, however, after finding plaintiff could perform her past relevant work, the ALJ did not make an alternative step-five finding. Therefore, remand is necessary because the ALJ here did not apply the correct legal standard.

**IV. Evaluation of Medical Opinions**

Plaintiff also claims the ALJ erred in weighing the medical opinions and did not make a finding regarding the weight accorded the opinion of her treating psychiatrist, Dr. Ibarra. She concedes the opinion is not worthy of "controlling weight" in the circumstances, but argues that a proper weighing of the evidence would require the ALJ to reject the opinions of the consultant examiners, Dr. Mintz and Dr. Anderson, and accord substantial weight to the opinion of Dr. Ibarra. The Commissioner argues that Dr. Ibarra was not a "treating physician" within the meaning of the Act and regulations when he formulated the opinion at issue here, and that the evidence supports a determination to discount Dr. Ibarra's opinion. He explains how, in his view, the evidence supports a finding that the opinions of Drs. Mintz and Anderson outweigh the opinion of Dr. Ibarra. Most of plaintiff's and of the Commissioner's arguments merely invite the court to reweigh the evidence and the medical opinions. The court declines the invitation. Nonetheless, plaintiff is correct that the ALJ did not state the weight accorded Dr. Ibarra's opinion and, therefore, failed to apply the correct legal standard for weighing the medical opinions. Therefore, the court will briefly discuss the errors.

The ALJ discussed opinions given by Dr. Kellenberger, "claimant's primary care doctor;" Dr. Komes, a consultant who

examined plaintiff at the request of the agency; Dr. Mintz, a consultant who performed a mental status examination; Dr. Ibarra, a psychiatrist plaintiff saw "for her depression and anxiety;" and Dr. Anderson, a consultant psychological examiner. (R. 28-30). The ALJ stated the weight given to several of the medical sources, and the reasons for that weight. Id. He gave "substantial weight" to Dr. Kellenberger's opinion regarding plaintiff's physical condition but "little weight" to "his opinion with respect to mental functioning." (R. 29). He gave "no weight" to Dr. Kellenberger's opinion that plaintiff "was disabled due to functional psychotic disorder." (R. 30). The ALJ gave "significant weight" to Dr. Komes's opinion regarding plaintiff's physical abilities. (R. 29). He gave "substantial weight" to the opinions of Dr. Mintz and Dr. Anderson, "to the extent they are consistent with the residual functional capacity" assessed by the ALJ, but noted that he had assessed greater mental limitations than had Dr. Mintz because the limitations assessed by him were reflected in "the longitudinal record and [in] later evidence" not available to Dr. Mintz, but recognized by Dr. Anderson. (R. 30).

As plaintiff noted in her brief, the ALJ discussed Dr. Ibarra's opinion but did not state what weight he accorded that opinion. The ALJ stated that Dr. Ibarra completed a State of Kansas form in which he reported that plaintiff is unable to work

-14-

due to depression. (R. 29). The ALJ stated four inconsistencies regarding Dr. Ibarra's opinion: (1) It is inconsistent with Dr. Mintz's evaluation done in October 2004. (2) It is inconsistent with Dr. Anderson's evaluation done in May 2007. (3&4) It is inconsistent with Dr. Ibarra's diagnosis of dysthymic disorder and assessment of a GAF[1] score of 55. Id. He reasoned, that dysthymic disorder is a "long term, milder form of depression," that a GAF score of 55 "indicates only moderate symptoms or moderate difficulty," that Dr. Ibarra made the diagnosis and the assessment on the same day he stated his opinion that plaintiff is unable to work due to depression, and that the diagnosis and GAF score assessment do not support the opinion that plaintiff is disabled due to depression. (R. 29).

Plaintiff acknowledges the reasons given by the ALJ and assumes that the ALJ rejected Dr. Ibarra's opinion outright. (Pl. Br. 20-23). However, as plaintiff argues, the ALJ did not

---

[1]Global Assessment of Functioning. A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 30 (4th ed. 1994). The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). Id. at 32. GAF is a classification system providing objective evidence of a degree of mental impairment. Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).
    A GAF score in the range of 51-60 indicates "**Moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning.**" DSM-IV at 32(emphasis in original).

-15-

apply the correct legal standard for evaluating medical opinions. First, the ALJ did not consider whether the opinion is a treating source opinion and worthy of the deference usually accorded such opinions.  E.g., Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); Doyal, 331 F.3d at 762; Goatcher v. Dep't of Health & Human Serv., 52 F.3d 288, 289-90 (10th Cir. 1995).  As the Commissioner argues, Dr. Ibarra formulated the opinion at issue on March 7, 2005 (R. 352-54), at the first time he examined plaintiff, and after less than thirty minutes (R. 425-26).  (Comm'r Br. 5 & n.1).[2]  While this may be a basis to find that Dr. Ibarra was not a "treating source" within the meaning of the regulations when he formulated his opinion, or to argue that the opinion is worthy of less weight than many "treating source" opinions, the ALJ did not make that inquiry and did not use this basis to discount Dr. Ibarra's opinion.

Moreover, the error in failing to determine whether the opinion is a treating source opinion makes it impossible to determine whether the ALJ properly examined Dr. Ibarra's opinion in light of the opinions of Drs. Mintz and Anderson.  "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians'

---

[2]The treatment notes are dated 3/21/2005, but they state the "Date of Service" as 3/7/2005.  (R. 425-26).  3/21/2005 is likely the date the notes were transcribed.  In any case, Dr. Ibarra signed both the treatment notes and the opinion form and dated them 3/7/05.  (R. 354, 426).

reports 'to see if [they] 'outweigh[]' the treating physician's report, not the other way around.'" Goatcher, 52 F.3d at 289-90 (quoting Reyes v. Bowen, 845 F.2d 242, 245 (10th Cir. 1988)). Here, the ALJ merely discounted Dr. Ibarra's opinion because it was inconsistent with the reports of Dr. Mintz and Dr. Anderson. If Dr. Ibarra's opinion is that of a treating source, the ALJ must examine the other physicians' reports and explain why they outweigh Dr. Ibarra's report. He did not do that here.

Finally, where no treating source opinion is worthy of controlling weight, the regulations require that all medical source opinions be weighed in accordance with the regulatory factors and that the ALJ explain the relative weight assigned to each opinion. 20 C.F.R. §§ 404.1527(d), 416.927(d). Here, the ALJ did not engage in the relative weighing required. In fact, he did not even specify the weight, if any, of which he found Dr. Ibarra's opinion worthy. Remand is necessary for the ALJ to properly assess Dr. Ibarra's opinion, provide relative weighing of the medical source opinions, if necessary, and specify the weight accorded each opinion, including that of Dr. Ibarra.

**IT IS THEREFORE RECOMMENDED** that the decision of the Commissioner be REVERSED and that judgment be entered pursuant to the fourth sentence of 42 U.S.C. §(405(g) REMANDING this case for further proceedings consistent with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review. <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this <u>18th</u> day of November 2009, at Wichita, Kansas.

<u>s:/    Gerald B. Cohn</u>
**GERALD B. COHN**
**United States Magistrate Judge**